1   TRINETTE G. KENT (State Bar No. 222020)
2   Lemberg Law, LLC
3   1333 Stradella Road
    Los Angeles, CA 90077
4   Telephone: (480) 247-9644
    Facsimile: (480) 717-4781
5   E-mail: tkent@lemberglaw.com
6

7                   UNITED STATES DISTRICT COURT
8                   CENTRAL DISTRICT OF CALIFORNIA

9
10  Fred Wallin, *on behalf of himself and all*      Case No.:
    *others similarly situated,*
11                                                   **CLASS ACTION COMPLAINT FOR:**
                    Plaintiff,
12                                                   (1) Breach of Express Warranty;
13          vs.                                      (2) Breach of Express Warranties
                                                         Pursuant to the Magnuson-Moss
14  Naturelo Premium Supplements LLC,                    Warranty Act, 15 U.S.C. §2301, et
                                                         seq.;
15                  Defendant.                       (3) Fraudulent Concealment;
16                                                   (4) Violation of Cal. Bus. & Prof. Code
17                                                       §§ 17500, et seq.;
18                                                   (5) Violation of the California
                                                         Consumers Legal Remedies Act,
19                                                       Cal. Civ. Code §§ 1750, et seq.; and
20                                                   (6) Violation of California's Unfair
                                                         Competition Law, Cal. Bus. & Prof.
21                                                       Code §§ 17200, et seq.

22                                                   **DEMAND FOR JURY TRIAL**
23
24
25
26
27
28

                                                     CLASS ACTION COMPLAINT

For this Class Action Complaint, Plaintiff Fred Wallin, by undersigned counsel, states as follows:

## INTRODUCTION

1. Defendant Naturelo Premium Supplements LLC ("Defendant" or "Naturelo") formulates, manufactures and advertises and sells "premium" magnesium dietary supplements throughout the United States, including in California, that allegedly contain 200 mg of elemental magnesium per capsule. Naturelo claims that its magnesium supplements have been "formulated to support healthy bones, heart, & stress relief." However, Naturelo markets its products in a systematically misleading manner, stating that its products have ingredients, characteristics and benefits that they do not.

2. Indeed, because Defendant's sales are driven by consumers seeking magnesium supplementation, Naturelo prominently displays the total elemental magnesium contents of its supplements (the "Magnesium Supplements" or the "Supplements") – purportedly 200 mg per capsule – on the front and back of each product's label.

3. But the Magnesium Supplements do not contain 200 mg of elemental magnesium in each capsule and thus do not contain the quantity of magnesium that is advertised, and thus warranted, on each of the product's labels. Instead, the Supplements contain significantly less magnesium than what is claimed and displayed, and as set forth below, it is physically impossible for the capsules

2

Defendant uses for its Magnesium Supplement to contain the amount of claimed elemental magnesium.  In misstating the actual magnesium content of the Supplements, Naturelo violates federal law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling.  Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## **PARTIES**

4.      Plaintiff Fred Wallin ("Plaintiff") is and at all times relevant hereto was an adult individual residing in Westlake Village, California.  Plaintiff has purchased Naturelo's Magnesium Supplements within the last four years.  Plaintiff most recently purchased Defendant's Naturelo Supplements from Amazon in or around February 2022, and previously purchased the Magnesium Supplements from a local pharmacy within this District.

5.      Defendant Naturelo Premium Supplements LLC ("Naturelo" or "Defendant") is a Delaware limited liability company with a principal place of business at 440 US Highway 22, Suite 210, Bridgewater, New Jersey 08807. Naturelo manufactures, markets, advertises, distributes and sells a magnesium nutritional supplement product throughout the United States.

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Class Members, and Defendant are citizens of different states.

7.     Personal jurisdiction and venue are proper in this District because Naturelo conducts business itself or through agent(s) in this District, by advertising, marketing, distributing and/or manufacturing its products in this District, and because Plaintiff resides in this District and Plaintiff purchased Defendant's products and was exposed to Defendant's misrepresentations within this District.

## FACTUAL ALLEGATIONS

a. ***Defendant misrepresents that one capsule of the Magnesium Supplement contains 200 mg of elemental magnesium derived from magnesium glycinate chelate***

8.     The amount of elemental magnesium contained within Defendant's Magnesium Supplements is material to any consumer seeking to purchase a magnesium supplement.

9.     Defendant appears to sell its Magnesium Supplements in the form of magnesium glycinate chelate.

10.    Naturelo advertises that "Magnesium is essential for helping both the body and the mind to relax. It regulates the contraction and relaxation of

4

muscles, supporting healthy physical performance and helping to relieve tension and discomfort. It even supports your heart and blood vessels, helping to maintain healthy circulation and normal blood pressure. And magnesium plays an important role in the nervous system's relaxation response, regulating important neurotransmitters such as GABA and melatonin, which are essential for a calm mood and healthy sleep."[1]

11.    Defendant further advertises that "magnesium glycinate chelate" is a form of magnesium "that's easy for your body to absorb without stomach distress and enhances the natural calming benefits of magnesium."[2]

12.    Naturelo labels and advertises its Magnesium Supplements in a manner that highlights the amount of elemental magnesium contained within.  The Supplements list the alleged elemental magnesium content on the front label as well as on the back nutritional label. Such representations constitute an express warranty regarding the Magnesium Supplements' elemental magnesium content.

13.    Indeed, as set forth in the images of the labels on the following pages,[3] "MAGNESIUM" is prominently displayed on the front label in font larger and offset from the other text on the label and the front label notes that there is "200 mg per

---

[1] *See* https://naturelo.com/products/magnesium-glycinate-chelate (last visited Feb. 12, 2022).
[2] *See id.*
[3] All product images contained within this complaint were taken from Defendant's website, https://naturelo.com/products/magnesium-glycinate-chelate.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

capsule."

14.     Moreover, the Supplement Facts on the back label describe two

ingredients: "Magnesium (as Magnesium Glycinate Chelate)" and a "Magnesium-

Rich Plants Blend," comprised of spinach leaf, swiss chard leaf, okra fruit, quinoa

grain, black bean, pumpkin fruit, sunflower seed, and flaxseed."



6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15.   As set forth in the above images, the Magnesium Supplement labels claim that there is 200 mg of elemental magnesium in each capsule derived from magnesium glycinate chelate.

16.   The Supplement Facts, which are required to declare the amount of elemental magnesium, note that one (1) capsule of Defendant's Magnesium Supplement, which constitutes the recommended serving size, contains  "200 mg" of "Magnesium (as Magnesium Glycinate Chelate)." *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/ (the U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of *elemental* magnesium in the product, not the weight of the entire magnesium-containing compound.") (last visited Feb. 17, 2022).

17.   The Supplement Facts also note that the listed 200mg of elemental magnesium derived from magnesium glycinate chelate constitutes 48% of the recommended Daily Value of magnesium.[4]  Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of

---

[4] The Supplement Facts do not list the Daily Value of magnesium contained in the "Magnesium-Rich Plants Blend."

8

significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium, the recommended Daily Value for adults and children over four years is 420 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv).

18.     Thus, the Supplement Facts' representation that one Magnesium Supplement capsule allegedly contains 48% of the Daily Value of magnesium is consistent with its representation that there is allegedly 200 milligrams of elemental magnesium in each capsule (200mg is 48% of 420mg).

19.     Further, the front label reinforces the false representations on the back label by likewise claiming that there is "200 mg per capsule."

b. ***Given the size of the capsules and the amount of elemental magnesium contained within magnesium glycinate chelate, it is impossible for one capsule of the Magnesium Supplement to contain 200 mg of elemental magnesium***

20.     Defendant's above representations are false and misleading.

21.     It is impossible for one capsule of Defendant's Magnesium Supplement to contain the advertised and warranted 200 mg of elemental magnesium in light of (1) the amount of elemental magnesium contained in magnesium glycinate chelate and (2) the maximum capacity of the capsules Defendant uses for its Magnesium Supplements.

9

22.     First, Defendant "use[s] Size 00 capsules" for its Magnesium Supplements.[5] While the amount of powder a capsule can contain may vary based on the density of the powder contained therein, size 00 capsules hold approximately 735 mg of powder.[6] On the highest end of the density spectrum, a size 00 capsule can contain 1,092 mg of powder with a density of 1.2 g/ml; on the end of the spectrum, size 00 capsules can fit up to 546 mg of powder with a density of 0.6 g/ml.[7]

23.     Second, magnesium glycinate contains only 14.1% elemental magnesium by mass.[8] Accordingly, approximately 1,418 mg of magnesium glycinate is needed to obtain 200 mg of elemental magnesium.

24.     Yet as set forth above, the size 00 capsules Defendant uses for its Magnesium Supplement cannot physically fit 1,418 mg of powder regardless of its density.

25.     Therefore, *even if* the only ingredient in the Magnesium Supplements were magnesium glycinate chelate and regardless of its density, there is necessarily

---

[5] https://naturelo.com/products/magnesium-glycinate-chelate ("We use Size 00 capsules, which are 0.91 inches long by 0.33 inches wide (23 x 8 millimeters). Most people find that they go down easily with a big gulp of water. However, if you have trouble swallowing, you can easily open the capsule and sprinkle the powder onto your food or drink. Mixing the powder with a thick liquid such as yogurt, applesauce, or a smoothie works best.") (last visited Feb. 17, 2022).

[6] *See, e.g.,* https://capsuleconnection.com/capsule-sizing-info/ (last visited Feb. 17, 2022).

[7] *See id.*

[8] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited Feb. 17, 2022).

10

less than 200mg of elemental magnesium in each capsule.[9][10]

26.    However, in addition to magnesium glycinate chelate and 30 mg of a "Magnesium-Rich Plants Bend," each capsule of the Magnesium Supplement also contains non-active ingredients such as "Rice Flour (Brown)" and "Rice Bran Extract" which further lowers the amount of elemental magnesium that can be contained within the size 00 capsules that Defendant uses.

27.    In light of the foregoing, Defendant's representations that one capsule or serving of the Magnesium Supplements contains 200mg of elemental magnesium is false.

28.    The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law. The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe,

---

[9] For instance, if the magnesium glycinate contained a high density of 1.2 g/ml, 1,092 mg of magnesium glycinate chelate would fit within the size 00 capsule, containing approximately 154 mg of elemental magnesium. On the other end of the spectrum, if the magnesium glycinate had a density of 0.6 g/ml, 546 mg would fit withing the size 00 capsule, containing approximately 77mg of elemental magnesium. In both instances, significantly less than 200mg of elemental magnesium derived from magnesium glycinate chelate can fit within a size 00 capsule.

[10] Tellingly, other size 00 capsule magnesium glycinate chelate supplements marketed and sold by other companies purport to contain significantly less elemental magnesium than Naturelo's Magnesium Supplement.  For instance, one such magnesium glycinate chelate supplement's Supplement Facts states that "Each (size 00) vegetarian capsule contains: Magnesium (as magnesium glycinate) 120 mg." See https://www.pureencapsulationspro.com/magnesium-glycinate.html (last visited Feb. 17, 2022).

11

wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).  In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, *et seq.*

29.     Naturelo's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

30.     California prohibits the misbranding of food in a way that parallels the FDCA through the "Sherman Food, Drug, and Cosmetic Law," Cal. Health & Safety Code § 109875, et seq. (the "Sherman Law").  The Sherman Law explicitly incorporates by reference "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as the food labeling regulations of Cal. Health & Safety Code § 110100(a). Accordingly, the Sherman Law also provides that food or nutritional supplements are misbranded if its labeling is "false or misleading in any particular." *Id.*

31.     Naturelo's representations regarding the elemental magnesium contents of its Magnesium Supplement are material. Reasonable consumers of magnesium supplements base their purchasing decisions on the advertised and warranted amount of elemental magnesium contain therein. Additionally, consumers reasonably rely of Defendant's label to accurately determine the identity and amount of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature of the Magnesium Supplements' elemental magnesium contents.

32.     Further, such misrepresentations also breach Defendant's express warranty that each Magnesium Supplement contains elemental magnesium in the amount listed on its label (200 mg).

33.     The difference between the Magnesium Supplements promised and the products sold is significant and material. The amount of actual elemental magnesium provided, and the measure of elemental magnesium per serving/capsule, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium supplementation – whether to "support[ ] healthy muscle and nerve function to help relieve tension and discomfort for healthy physical performance, recovery, and relaxation" or to "support[ ] the parasympathetic nervous system and help[ ] regulate melatonin and GABA for a healthy stress response, calm mood, and better sleep," as

13

Naturelo claims[11] – are left to ingest less elemental magnesium than Defendant states will be provided.

34.    Because Plaintiff and Class Members purchased a product that contains less elemental magnesium than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature of the elemental magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the elemental magnesium actually delivered with the Supplements.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

35.    Plaintiff brings this action on his own behalf and on behalf of the following Classes of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

---

[11] *See* https://naturelo.com/products/magnesium-glycinate-chelate (last visited Feb. 17, 2022).

14

**Nationwide Class:** All persons in the United States who, within four (4) years of the filing of this Complaint, purchased Defendant's Magnesium Supplements.

**California Sub-Class:** All persons residing in California who, within four (4) years of the filing of this Complaint, purchased Defendant's Magnesium Supplements.

36.   Any legal entity, Defendant and its employees or agents are excluded from the Class.

**B.   Numerosity**

37.   Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, Plaintiff believes, and on that basis allege, that there are thousands of members of the Nationwide Class and California Sub-Class.

**C.   Common Questions of Law and Fact**

38.   There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.    Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's elemental magnesium content;

b.    Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices in

15

violation of, *inter alia*, Cal. Bus. & Prof. Code §§ 1770 *et seq*., including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant misrepresents that the Magnesium Supplements have benefits which they do not have; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c.      Whether Defendant's sale of the Magnesium Supplements constitutes misleading and deceptive advertising under, *inter alia*, Cal. Bus. & Prof. Code § 17500;

d.      Whether Defendant's sale of the Magnesium Supplements constitutes "unlawful," "unfair," or "fraudulent" business acts or practices under, *inter alia,* Cal. Bus. & Prof. Code §§ 17200 *et seq.*, including: whether Defendant's sale of the Magnesium Supplements constitutes "unlawful" or "unfair" business practices by violating the public policies set out in Cal. Bus. & Prof. Code §§ 1770 *et seq.*, Cal. Bus. & Prof. Code §§ 17500 and other California and federal statutes and regulations; whether Defendant's sale of the Magnesium Supplements is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; and whether Defendant's sale of the Magnesium Supplements constitutes an "unfair"

16

business practice because consumer injury outweighs any countervailing benefits to consumers or competition, and because such injury could not be reasonably avoided by consumers;

e.     The nature and extent of damages, restitution, equitable remedies, and declaratory and injunctive relief to which Plaintiff and the Class are entitled; and

f.     Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of suit.

**D.   Typicality**

39.     The Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class.  Furthermore, Plaintiff and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent Class members.

**E.   Protecting the Interests of the Class Members**

40.     Plaintiff will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor his counsel has any interest which might cause them not to vigorously pursue this action.

**F.   Proceeding Via Class Action is Superior and Advisable**

41.     A class action is the superior method for the fair and efficient

17

adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

42.     Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of the Nationwide Class)**

43.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

44.     Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of

18

Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' elemental magnesium content.

45.     The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Nationwide Class on the one hand, and Defendant on the other.

46.     All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

47.     Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of elemental magnesium, as alleged above.

48.     As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

## SECOND CAUSE OF ACTION
**Breach of Express Warranties Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et seq.***
**(On behalf of the Nationwide Class)**

49.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

50.    This claim is brought by Plaintiff on behalf of himself and the Nationwide Class solely for breach of federal law. This claim is not based on any violation of state law.

51.    The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 et seq., creates a private federal cause of action for breach of a "written warranty" as defined by the Act. 15 U.S.C. § 2301(6) and § 2310(d)(1).

52.    The Magnesium Supplements are "consumer products" as that term is defined by 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

53.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3), since they are buyers of the Magnesium Supplements for purposes other than resale.

54.    Defendant is an entity engaged in the business of making and selling dietary supplements available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. §

20

2301(4).

55.     Through its labeling, Defendant gave and offered a written warranty to consumers relating to the elemental magnesium contents of the Magnesium Supplements. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

56.     Defendant provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Magnesium Supplements as containing a specific amount of elemental magnesium. These affirmations of fact regarding the nature and quantity of the ingredients in the Magnesium Supplements constituted, and were intended to convey to purchasers, a written promise that the ingredients in the products were free of a particular type of defect (i.e., the Magnesium Supplements would include a particular ingredient in a certain amount). As such, these written promises and affirmations were part of the basis of Plaintiff's and the Class's bargain with Defendant in purchasing the Magnesium Supplements.

57.     Defendant breached the written warranty by failing to provide and supply the Magnesium Supplements as promised. Specifically, the Magnesium Supplements did not contain the amount of elemental magnesium warranted, and thus were defective.

58.     Plaintiff and members of the Class were injured by Defendant's failure to comply with its obligations under the written warranty since Plaintiff and members of the Class paid for products that did not have the promised ingredients of a particular

21

quality and amount, did not receive the defect-free magnesium supplement that was promised to them and that they bargained for, and paid a premium for the Magnesium Supplements when they could have instead purchased other less expensive alternative magnesium supplements.

59.     Plaintiff and the Class therefore for this claim seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

### THIRD CAUSE OF ACTION
### Fraudulent Concealment
### (On behalf of the Nationwide Class)

60.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

61.     By failing to disclose and concealing the defective nature of the Magnesium Supplements from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include the amount of elemental magnesium derived from magnesium glycinate chelate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

62.     Defendant knew or should have known that the Magnesium Supplements did not contain the amount of elemental magnesium advertised and warranted and were not suitable for their intended use.

63.     Defendant was under a duty to Plaintiff and the Class Members to

22

disclose the defective nature of the Magnesium Supplements because:

a. Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements;

b. Plaintiff and the Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of elemental magnesium advertised and warranted; and,

c. Defendant knew that Plaintiff and the Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

64. On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

65. The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

66. Plaintiff and the Class relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

67. By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty

23

not to do so.

68. Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted elemental magnesium, they would not have purchased the Magnesium Supplements or would have paid less for them.

69. As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

70. Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

71. Defendant's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

72. Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchase of falsely advertised and misbranded Magnesium Supplements.  Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving magnesium supplements of the quality, nature, fitness, or value that had been

24

represented by Defendant, and that a reasonable consumer would expect.

73.      Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### FOURTH CAUSE OF ACTION
**Violation of Cal. Bus. & Prof. Code §§ 17500, *et seq.*- Untrue, Misleading and Deceptive Advertising**
**(On Behalf of the California Sub-class)**

74.      Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

75.      At all material times, Defendant engaged in a scheme of offering the Magnesium Supplements for sale to Plaintiff, and other members of the Class by way of, *inter alia*, commercial marketing, and advertising, internet content, product packaging and labelling, and other promotional materials.

76.      These materials, advertisements and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements as alleged herein. Such advertisements and inducements appear on the labels of Defendant's Magnesium Supplements and Defendant's website.

77.       Defendant's advertisements and other inducements come within the

definition of advertising as contained in Cal. Bus. Prof. Code §§ 17500, et seq., in that such promotional materials were intended as inducements to purchase Defendant's Magnesium Supplements and are statements disseminated by Defendant to Plaintiff and other members of the Class.

78.    Defendant knew, or in the exercise of reasonable care should have known, that the statements regarding its Magnesium Supplements' elemental magnesium content were false, misleading and/or deceptive.

79.    Consumers, including Plaintiff and members of the Class, necessarily and reasonably relied on Defendant's statements regarding the contents of its products. Consumers, including Plaintiff and members of the Class, were among the intended targets of such representations.

80.    The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California and nationwide to consumers, including Plaintiff and members of the Class, were and are likely to deceive reasonable consumers by obfuscating the true nature and amount of the ingredients in Defendant's Magnesium Supplements, including the true source and amount of elemental magnesium, and thus were violations of Cal. Bus. Prof. Code §§ 17500, et seq.

81.    Plaintiff and Class members were harmed and suffered injury as a result of Defendant's violations of the Cal. Bus. Prof. Code §§ 17500, et seq. Defendant has been unjustly enriched at the expense of Plaintiff and the members of the Class.

26

82.     Accordingly, Plaintiff and members of the Class seek injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded supplements.

## FIFTH CAUSE OF ACTION
**Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* - Misrepresentation of a product's standard, quality, sponsorship approval, and/or certification**
**(On Behalf of the California Sub-class)**

83.     Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

84.     Defendant's Magnesium Supplements are a "good" as defined by California Civil Code §1761(a).

85.     Defendant is a "person" as defined by California Civil Code § 1761(c).

86.     Plaintiff and California Class members are "consumers" within the meaning of California Civil Code § 1761(d) because they purchased their Magnesium Supplements for personal, family or household use.

87.     The sale of Defendant's Magnesium Supplements to Plaintiff and

27

California Class members is "transaction" as defined by California Civil Code §1761(e).

88.     By labeling their Magnesium Supplements as containing a specific amount of elemental magnesium when in fact these products contained less than the advertised amount of magnesium, Defendant violated California Civil Code §§ 1770(a)(2), (5), (7) and (9), as it misrepresented the standard, quality, sponsorship, approval, and/or certification of its Magnesium Supplements.

89.     As a result of Defendant's conduct, Plaintiff and California Class members were harmed and suffered actual damages as a result of Defendant's unfair competition and deceptive acts and practices. Had Defendant disclosed the true nature and/or not falsely represented its Magnesium Supplements' elemental magnesium content, Plaintiff and the California Sub-Class would not have been misled into purchasing Defendant's Magnesium Supplements, or, alternatively, would have paid significantly less for them.

90.     Additionally, misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a refund of the purchase price of the misbrand nutritional supplements.

91.     Plaintiff, on behalf of himself and all other similarly situated California consumers, and as appropriate, on behalf of the general public of the state of

28

California, seeks injunctive relief prohibiting Defendant continuing these unlawful practices pursuant to California Civil Code § 1782(a)(2).

92.    Plaintiff provided Defendant with notice of its alleged violations of the CLRA pursuant to California Civil Code § 1782(a) via certified mail, demanding that Defendant correct such violations.

93.    If Defendant fails to respond to Plaintiff CLRA notice within 30 days, Plaintiff may amend this Complaint to seek all available damages under the CLRA for all violations complained of herein, including, but not limited to, statutory damages, punitive damages, attorney's fees and cost and any other relief that the Court deems proper.

### SIXTH CAUSE OF ACTION
**Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, et seq.**
**(On Behalf of the California Sub-Class)**

94.    Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

95.    The Sherman Law, Cal. Health & Safety Code §§ 109875 et seq., broadly prohibits the misbranding of any food or drug products.

96.    Defendant is a person within the meaning of Cal. Health & Safety Code § 109995.

97.    Additionally, California has adopted as its own, and as the Sherman Law expressly incorporates, "[a]ll food labeling regulations and any amendments to those

regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date" as "the food labeling regulations of this state." Cal. Health & Safety Code § 110100(a).  Federal statutes and regulations, including, but not limited to, 21 U.S.C. §§ 321, 343, prohibit the mislabeling and misbranding of food products, including nutritional supplements. See 21 U.S.C. § 321(ff) ("a dietary supplement shall be deemed to be a food within the meaning of this chapter."). .

98.    Federal statutes and regulations prohibit misleading consumers by misrepresenting a product's nutritional ingredients and including an ingredient or an amount of an ingredient on the Magnesium Supplements' nutritional labels that is not actually included in the products themselves.

99.    The California Civil Code § 1770(a)(2), (5), (7) and (9) also prohibits mislabeling food misrepresenting the standard, quality, sponsorship, approval, and/or certification of food products, as noted above.

100.    The business practices alleged above are unlawful under Business and Professional Code §§ 17500, et seq., California Civil Code §§ 1770(a)(2), (5), (7) and (9) and the Sherman Law, each of which forbids the untrue, fraudulent, deceptive, and/or misleading marketing, advertisement, packaging and labelling of food products and dietary supplements.

101.    As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff and members of the Class have suffered a substantial injury by virtue of buying a product that misrepresented and/or omitted the true contents and

30

benefits of the Magnesium Supplements' magnesium contents. Had Plaintiff and members of the Class known that Defendant's materials, advertisement and other inducements misrepresented and/or omitted the true contents and benefits of the Magnesium Supplements, they would not have purchased said products.  Likewise, Defendant's misleading and deceptive practices caused Plaintiff to purchase Defendant's Magnesium Supplements and/or pay more than they would have otherwise had they know the true nature of the contents of the Magnesium Supplements.

102.   As a result of Defendant's above unlawful, unfair and fraudulent acts and practices, Plaintiff, on behalf of himself and all others similarly situated, and as appropriate, on behalf of the general public, seeks injunctive relief prohibiting Defendant from continuing these wrongful practices, and such other equitable relief, including full restitution of all improper revenues and ill-gotten profits derived from Defendant's wrongful conduct to the fullest extent permitted by law. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded product.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for judgment against Defendant as follows:

31

a.  An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the undersigned as Class Counsel;

b.  An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.  An order awarding Plaintiff and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.  An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e.  Reasonable attorneys' fees and costs;

f.  Pre-judgment and post-judgment interest, as provided by law;

g.  Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

DATED:  February 24, 2022

By:   _/s/   Trinette G. Kent_
Trinette G. Kent, Esq.
Lemberg Law, LLC
*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT